IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

**REGINA LUCKETT, on behalf of herself
and all others similarly situated,**

> **Plaintiff,**

> **vs.**

Civil Action No: 5:21-CV-81 (Bailey)

**WESBANCO BANK, INC.,
a West Virginia corporation,**

> **Defendant.**

ELECTRONICALLY FILED
May 28 2021
U.S. DISTRICT COURT
Northern District of WV

## CLASS ACTION COMPLAINT

Plaintiff Regina Luckett, by counsel, on behalf of herself and all others similarly situated brings this class action complaint against WesBanco Bank, Inc. ("WesBanco" or "Bank"), and alleges the following:

### INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, WesBanco, arising from the unfair and unconscionable assessment and collection of: (a) "overdraft fees" ("OD Fees") on accounts that were never actually overdrawn; and (b) more than one "insufficient funds" fee ("NSF Fees") on the same item.

2.      This practice breaches contractual promises made in WesBanco's adhesion contracts.

3.      In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that WesBanco will only charge OD Fees on transactions where there are insufficient funds to cover them, and will assess only one NSF Fee on the *same* item or transaction.

1

4.      WesBanco also breaches its duty of good faith and fair dealing when it charges fees in the above circumstance.

5.      WesBanco's customers have been injured by WesBanco's improper practices to the tune of millions of dollars taken from their accounts in violation of their agreements with WesBanco.

6.      On behalf of herself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES

7.      Plaintiff is a citizen and resident of Albany, Indiana.

8.      Defendant WesBanco is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. WesBanco has its headquarters in Wheeling, West Virginia and operates banking branches in Indiana, West Virginia, Ohio, Pennsylvania, Kentucky and Maryland.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of West Virginia; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because WesBanco is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.    WESBANCO CHARGES TWO OR MORE FEES ON THE SAME ITEM

11.    As alleged more fully herein, Wesbanco's Account Documents allow it to take certain steps when its accountholders attempt a transaction but do not have sufficient funds to cover it. Specifically, Wesbanco may: (a) authorize the transaction and charge a *single* OD Fee; or (b) reject the transaction and charge a *single* NSF Fee.

12.    In contrast to its Account Documents, however, Wesbanco regularly assesses two or more NSF Fees on the *same* item or transaction.

13.    This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if a transaction is resubmitted for payment multiple times.

14.    Wesbanco's Account Documents never disclose this practice. To the contrary, Wesbanco's Account Documents indicate it will only charge a single NSF Fee on an item or per transaction.

### A.  Plaintiff's Experiences

15.    In support of her claims, Plaintiff offers an example of NSF Fees that should not have been assessed against her checking account. As alleged below, Wesbanco: (a) reprocessed a previously declined transaction; and (b) charged a fee upon reprocessing.

16.    On September 27, 2018, Plaintiff attempted a single ACH payment to Paypal.

17.    Wesbanco rejected payment of that transaction due to insufficient funds in Plaintiff's account and charged her a $35 NSF Fee for doing so. Plaintiff does not dispute the initial fee, as it is allowed by Wesbanco Account Documents.

18.    Then, on October 1, 2018, Wesbanco again rejected the item, and charged a *second* $35 NSF Fee on it.

19.    *In sum, Wesbanco charged Plaintiff $70 in fees to attempt to process a single item.*

**B. The Imposition of Multiple Fees on a Single Transaction Violates Wesbanco's Express Promises and Representations**

20.    The Account Documents provide the general terms of Plaintiff's relationship with Wesbanco and therein Wesbanco makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

21.    The Account Documents contain explicit terms indicating that fees will only be assessed once per transaction or single item—defined as a customer request for payment or transfer—when in fact Wesbanco regularly charges two or more fees per transaction or single item even though a customer only requested the payment or transfer once.

22.    Wesbanco's Account Documents indicate that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

23.    Wesbanco's Account Documents state that it will charge a single fee per item or transaction that is returned due to insufficient funds.

24.    The same "item" cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

25.    There is zero indication anywhere in the Account Documents that the same "item" or "transaction" is eligible to incur multiple NSF Fees.

26.    The same "item" on an account cannot conceivably become a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to reprocess it.

27.     There is zero indication anywhere in the Account Documents that the same "item" is eligible to incur multiple fees.

28.     The Fee Schedule included in the account contract indicates that only a single NSF Fee or OD Fee would be charged per item:

> **Return Item Charge** – Your Check or Electronic Debit Item Returned because of Nonsufficient Funds (per item) $35.00* $35.00

29.     Even if Wesbanco reprocesses an instruction for payment, it is still the same item. Wesbanco's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

30.     The Account Documents described never discuss a circumstance where Wesbanco may assess multiple NSF Fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

31.     In sum, Wesbanco promises that one NSF Fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, Wesbanco breached the contract when it charged more than one fee per item.

32.     Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in Wesbanco's Account Documents.

33.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which Wesbanco will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Wesbanco disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor have Wesbanco customers ever agree to such fees or practices.

5

34.     Customers reasonably understand, based on the language of the Account Documents and Wesbanco's other documents, that the Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

35.     Banks and credit unions that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Wesbanco never did here.

36.     For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as Wesbanco, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Deposit Account Agreement*, First Citizen's Bank (Sept. 2018), https://www.firstcitizens.com/ personal/banking/deposit-agreement (emphasis added).

37.     First Hawaiian Bank engages in the same abusive practices as Wesbanco, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www. fhb.com/ en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_ RXP1.pdf (last accessed August 30, 2019) (emphasis added).

38.     Klein Bank similarly states in its online banking agreement:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank 2 (Aug. 2018),

https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_

Charges.pdf (emphasis added).

39.    Wesbanco provides no such disclosure, and in so doing, deceives its accountholders.

**C.  The Imposition of Multiple Fees on a Single Transaction Breaches Wesbanco's Duty of Good Faith and Fair Dealing**

40.    Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Wesbanco is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Wesbanco has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor.

41.    Here—in the adhesion agreements Wesbanco foisted on Plaintiff and its other customers—Wesbanco has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Wesbanco abuses that discretion to take money out of

consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

42.     Wesbanco abuses the power it has over customers and their credit union accounts and acts contrary to reasonable expectations under the Account Documents when it construes the word "item" to mean each iteration of the same payment. This is a breach of Wesbanco's implied covenant to engage in fair dealing and to act in good faith.

43.     Further, Wesbanco maintains complete discretion not to assess NSF Fees on transactions at all. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, Wesbanco breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

44.     Further, Wesbanco maintains complete discretion whether to reject or pay a transaction. By rejecting an item and charging an insufficient funds fee, and then later paying the same item into overdraft, Wesbanco abused its discretion to the prejudice of Plaintiff and other customers.

45.     It was bad faith and totally outside Plaintiff's reasonable expectations for Wesbanco to use its discretion to assess two or more fees for a single attempted payment.

46.     When Wesbanco charges multiple fees, Wesbanco uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations. Wesbanco uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

## II.  WESBANCO CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

### A.  Overview of Claim

47.    WesBanco issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

48.    Pursuant to its Account Documents, WesBanco charges fees for debit card transactions that purportedly result in an overdraft.

49.    Plaintiff brings this cause of action challenging WesBanco's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

50.    Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, WesBanco immediately reduces accountholders checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. As a result, customers' accounts will always have sufficient available funds to cover these transactions because WesBanco has already sequestered these funds for payment.

51.    However, WesBanco still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

52.    Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, WesBanco later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance.  These types of transactions are APPSN Transactions.

53.    WesBanco maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to

account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, WesBanco sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

54.    Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

55.    That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

56.    Still, despite keeping those held funds off-limits for other transactions, WesBanco improperly charges OD Fees on those APPSN Transactions, although the APPSN Transactions *always* have sufficient available funds to be covered.

57.    Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

58.    There is no justification for these practices, other than to maximize WesBanco's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But WesBanco is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But WesBanco was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

59.     Besides being unfair and unjust, these practices breach contract promises made in WesBanco's adhesion contracts—contracts which fail to inform accountholders about, and in fact, misrepresent, the true nature of WesBanco's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

60.     In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that WesBanco will only charge OD Fees on transactions that have insufficient funds to "cover" that debit card transaction.

61.     In short, WesBanco is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.     Mechanics of a Debit Card Transaction**

62.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from WesBanco. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to WesBanco, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

63.     At this step, if the transaction is approved, WesBanco immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

64.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in

the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

65.     Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

66.     WesBanco (like all credit unions and banks) decides whether to "pay" debit card transactions at authorization.  After that, WesBanco is obligated to pay the transaction no matter what.  For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined.  It is at that point—and only that point—when WesBanco may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

67.     There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

C.     **WesBanco's Account Documents**

68.     Plaintiff has a WesBanco checking account, which is governed by WesBanco's Account Documents.

69.     Amongst the Account Documents which govern Plaintiff's relationship with WesBanco is a document entitled, *Consumer Deposit Account Agreement*, which contains a Non-

Sufficient Funds and Overdrafts disclosure (hereinafter "NSF and ODs Disclosure").

70.    The NSF and ODs Disclosure states in pertinent part:

**Non-Sufficient Funds and Overdrafts**. If your account lacks sufficient funds available to pay a check, preauthorized transfer or other debit activity presented for payment, we may (1) return the item, or (2) pay the item at our discretion. If we return the item without paying it, we may charge you a non-sufficient funds fee. If we do pay the item on your behalf, you will be responsible to pay the overdrawn balance and an overdraft fee. Overdrafts may be covered by our standard overdraft practice that comes with your account or an overdraft protection plan, such as a link to an account or a line of credit. As part of our standard overdraft practice, we do not authorize and pay overdrafts on ATM or everyday debit card transactions unless you request us to do so. Our handling of these items may subject your account to a fee as disclosed in the fee schedule or other Disclosures.

. . .

**Processing Order**. We will process items, such as credits, checks, and other debit items in accordance with our processing order policy. The processing order of these items is important because if there is not enough money in the account to pay for the items in the order they are processed in accordance with the processing order, there may be an overdraft on your account which may result in overdraft or non-sufficient funds fees or an increase in the amount of these fees. *In determining if an account is overdrawn, we sort items for processing first by transaction type in the following order: debit memos and telephone transfers, ATM, PIN-based debit card transactions, signature-based debit card transaction, pre-authorized debit transactions, bill pay transactions, other electronic transactions, and then paper-based checks or drafts. After sorting by transaction type, all transaction types, except for paper based checks or drafts, are then processed in a low to high dollar amount order. Within check and draft transaction types, items are processed by check number order, first for transactions initiated at bank offices and then for other paper-based items.*

71.    For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to cover those transactions—yet WesBanco assesses OD Fees on them anyway.

72.    The above promise means that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is not true for APPSN

14

Transactions.

73.    APPSN transactions are always initiated at the time the customer swipes the debit card when there are sufficient available funds in the account.

74.    In fact, WesBanco actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions. Instead, it uses a secret posting process described below.

75.    All the above representations and contractual promises are untrue. In fact, WesBanco charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that WesBanco may impose OD Fees on any APPSN Transactions.

76.    The NSF and OD Disclosure misconstrues WesBanco's true debit card processing and overdraft practices.

77.    First, and most fundamentally, WesBanco charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that WesBanco will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

78.    WesBanco assesses OD Fees on APPSN Transactions that **_do_** have sufficient funds available to cover them throughout their lifecycle.

79.    WesBanco's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between WesBanco's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

80.    Next, sufficient funds for APPSN Transactions are actually debited from the

15

account immediately, consistent with standard industry practice.

81.    Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what WesBanco does when it re-debits the account during a secret batching posting process.

82.    In reality, WesBanco's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

83.    At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, WesBanco cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

84.    Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, WesBanco does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, WesBanco releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

85.    This secret step allows WesBanco to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which WesBanco specifically set aside money to pay them.

86.    This discrepancy between WesBanco's actual practices and the contract causes accountholders to incur more OD Fees than they should.

87.    In sum, there is a huge gap between WesBanco's practices as described in the NSF and OD Disclosure and WesBanco's practices in reality.

### D.    WesBanco Abuses Contractual Discretion

88.    WesBanco's treatment of debit card transactions to charge OD Fees is more than a breach of the express terms of the Account Documents. In addition, WesBanco exploits contractual discretion to the detriment of accountholders when it uses these policies.

89.    Moreover, WesBanco uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

90.    WesBanco uses these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

### E.    Plaintiff's Debit Card Transactions

91.    As an example, on December 18, 2019, Plaintiff was assessed OD Fees for debit card transactions that settled on that day, despite the fact that positive funds were deducted immediately, prior to that day, for the transactions on which Plaintiff was assessed OD Fees.

### CLASS ACTION ALLEGATIONS

92.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.  The proposed classes are defined as:

93.    Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated. The Classes are defined as:

> All accountholders who, during the applicable statute of limitations, were charged OD Fees on APPSN Transactions on a WesBanco checking account.

> All accountholders who, during the applicable statute of limitations, were charged more than one NSF Fee on an item on a WesBanco checking account.

94.     Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

95.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

96.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because WesBanco has acted on grounds generally applicable to the class.  Such common legal or factual questions include, but are not limited to:

    a)     Whether WesBanco improperly charged OD Fees on APPSN Transactions;

    b)     Whether WesBanco improperly assessed more than one NSF Fee on the same item;

    c)     Whether the conduct enumerated above violates the contract;

    d)     Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

    e)     Whether the conduct enumerated above is a deceptive trade practice in violation West Virginia law;

    f)     The appropriate measure of damages.

97.     The parties are numerous such that joinder is impracticable.  Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the

identity of whom are within the exclusive knowledge of and can be ascertained only by resort to WesBanco's records.  WesBanco has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

98.    It is impracticable to bring members of the Class' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

99.    Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by WesBanco, as described herein.

100.    Plaintiff is a more than adequate representative of the Classes in that Plaintiff is a WesBanco checking accountholder and has suffered damages as a result of WesBanco's contract violations.  In addition:

a)    Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

b)    There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c)    Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d)    Plaintiff's legal counsel has the financial and legal resources to meet the

substantial costs and legal issues associated with this type of litigation.

101.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

102.    WesBanco has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

103.    All conditions precedent to bringing this action have been satisfied and/or waived.

**BREACH OF CONTRACT INCLUDING THE**
**COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Individually and on Behalf of the Class)**

104.    Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

105.    Plaintiff, and all members of the proposed Class contracted with WesBanco for checking account services, including debit card services.

106.    WesBanco breached promises made to Plaintiff and all members of the proposed class when as described herein, WesBanco charged OD Fees as a result of transactions that did not overdraw a checking account, on APPSN Transactions, and assessed more than one NSF Fee on an item.

107.    In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

108.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

109.    The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

110.    WesBanco has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein.  Specifically, WesBanco should not have used its discretion to charge OD Fees on APPSN Transactions or to define "item" in a manner that leads to more NSF Fees. The Account Documents do not have a contract term permitting OD Fees on such transactions, nor multiple NSF Fees on the same item, and the documents are otherwise ambiguous as to any right for WesBanco to charge OD Fees on APPSN Transactions or more than one NSF Fee on the same item.

111.    Plaintiff and all members of the proposed Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

112.    Plaintiff and all members of the proposed Classes have sustained damages as a result of WesBanco's breaches of the contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.    Certification for this matter to proceed as a class action on behalf of the Class;

B.      Declaring WesBanco's OD and NSF Fee policies and practices to be in breach of its contract with accountholders;

C.      Restitution of all OD and NSF Fees improperly assessed and paid to WesBanco by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

D.      Actual damages in an amount according to proof;

E.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F.      For costs and attorneys' fees under the common fund doctrine and all other applicable law; and

G.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  May 28, 2021

**Respectfully submitted,**

**REGINA LUCKETT, on behalf of herself
and all others similarly situated,**

**By counsel,**

_____*s/ Scott S. Segal*_____

Scott S. Segal (WV Bar No. 4717)
Jason P. Foster (WV Bar No. 10593)
**The Segal Law Firm**
A Legal Corporation
810 Kanawha Blvd E
Charleston, WV 25301
Phone: (855) 344-9100

Fax: (304) 344-9105
Email: scott.segal@segal-law.com
        Jason.foster@segal-law.com

Taras Kick, CA Bar No. 143379 (*pro hac vice*
admission pending)
Jeffrey C. Bils, CA Bar No. 301629 (*pro hac vice*
admission pending)
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Phone: (310) 395-2988
Fax:  (310) 395-2088
Email:  taras@kicklawfirm.com

Jeffrey D. Kaliel, CA Bar No. 238293 ( (*pro hac
vice* admission pending)
Sophia G. Gold, CA Bar No.  307971 (*pro hac
vice* admission pending)
**KALIEL GOLD PLLC**
1875 Connecticut Ave. NW 10th Floor
Washington, D.C. 20009
Phone: (202) 350-4783
Email: jkaliel@kalielpllc.com
        sgold@kalielplllc.com

*Attorneys for Plaintiff and the Putative Class*